IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.:_____

EARL COOK,

    Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE AND WRONGFUL TERMINATION

## JURISDICTION AND VENUE

1. This action is instituted and authorized pursuant to The American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 and § 12117, as amended, ADA Amendments Act of 2008, and North Carolina law.

2. All of the unlawful employment practices and the termination complained of were committed by the Defendant.

## PARTIES

3. Plaintiff is a citizen and resident of Wilkes County, North Carolina.

4. Defendant is a corporation organized and existing under and by virtue of the laws of the State of Ohio and is registered and authorized to conduct business in North Carolina.

5. Defendant employs in excess of 500 employees.

6. Defendant is an employer within the meaning of the ADA and North Carolina law.

1

## ADMINISTRATIVE PROCEDURES

7. Plaintiff has satisfied all private, administrative and judicial prerequisites prior to commencement of this action.

8. Plaintiff received by mail a Dismissal and Notice of Rights for EEOC Charge No: 435-2018-00800 dated January 17, 2020. (attached as Exhibit 1)

9. Plaintiff timely filed a Charge of Discrimination with the EEOC designated as EEOC Charge No: 435-2018-00800. (attached as Exhibit 2)

## FACTUAL ALLEGATIONS

10. Plaintiff was employed by Defendant on or about September 14, 2014 as a Preloader. On January 4, 2015 Plaintiff was promoted to Preload Supervisor.

11. Plaintiff was improperly discriminated against by Defendant beginning on or about April 5, 2018 and effectively terminated July 2018.

12. Plaintiff worked for Defendant in Wilkesboro, Wilkes County, North Carolina.

13. Defendant's duly authorized agents, employees, supervisors, managers or officers were, at all relevant times, acting for and on behalf of Defendant and within the course and scope of their authority.

14. On July 15, 2017, Plaintiff suffered a hemorrhagic stroke requiring hospitalization until August 22, 2017, after which time Plaintiff began physical therapy treatment.

15. Plaintiff remained out of work and received further craniectomy skull surgery related to the stroke on or about October 26, 2017.

16. On April 4, 2018, Plaintiff received an authorization to return to work with restriction from his healthcare professionals. (Novant Health Work release dated April 4, 2018 attached as Exhibit 3)

17. Plaintiff's Preloader Supervisor job description contained no weight restrictions until after Plaintiff's stroke and when Plaintiff returned to work after receiving his authorization to return to work with restrictions.

18. On April 5, 2018, Plaintiff reported to work at 4:30 am in the Wilkesboro facility and resumed his job as Preload Supervisor.

19. At approximately 8:30 am Plaintiff receive a telephone call from Nancy Bailey ("Ms. Bailey"), Center Manager, who stated Plaintiff should not have come in to work, that Plaintiff could not work with any restrictions, that Plaintiff could not work until he was 100%, that Plaintiff had one year from the July 15, 2017 stroke to get back to 100% and that Plaintiff would not get paid for his work on April 5, 2018.

20. As work needed to be completed on April 5, 2018, Plaintiff worked until 10:00 am when his job shift ended and went home.

21. Due to the Plaintiff's stroke, Plaintiff benefits from the reasonable accommodations of working with a temporary lifting restriction of 25 pounds, no driving for 6 months, a 10 minute break every 2 to 2 ½ hours, and being able to use a computer downstairs, which is not otherwise used during Plaintiff's work shift, instead of the computer upstairs.

22. As a Preload Supervisor, the following Defendant employees reported to Plaintiff: 6 Preloaders, 2 Unloaders, 2 Scanners, and 1 Mail Sorter reported to Plaintiff.

23. Plaintiff requested that he be permitted to work as Preload Supervisor with the restriction set forth in his April 4, 2018 authorization to return to work. Further, Plaintiff requested he be permitted to use the computer downstairs instead of upstairs which was otherwise not used during the hours of Plaintiff's work shift.

3

24. The 6 Preloaders, 2 Unloaders, 2 Scanners and 1 Mail Sorter which Plaintiff supervised are International Brotherhood of Teamsters union ("IBT") workers.

25. In Plaintiff's job as Preload Supervisor, he is not allowed or permitted to pick up or move packages which are the responsibility of the Preloaders and Unloaders.

26. The ("IBT") mandates that supervisors not move packages that are the responsibility of the Preloaders and Unloaders who are permitted and have filed grievances stating that work was taken away from them by supervisors moving packages and boxes.

27. Since April 2018, all Plaintiff work accommodation requests have been denied by Defendant.

28. On May 15, 2018, a meeting was held at the Wilkesboro facility with Kendra Coates ("Ms. Coates"), South Atlantic HR Manager, Plaintiff and Sharon Klinger ("Ms. Klinger"), Occupational Nurse, joining via telephone.

29. The alleged purpose of the meeting was to discuss accommodations that would allow Plaintiff to continue his work as a Preload Supervisor, including the medial restrictions set forth in Plaintiff's authorization to return to work letter dated April 4, 2018, and that Plaintiff be permitted to use the downstairs computer which was not otherwise used during the Plaintiff's work shift instead of the upstairs computer as Plaintiff had previously requested.

30. All working accommodations, which Defendant had been aware of since April 5, 2018, were immediately and summarily not considered and shut down with Ms. Coates stating that Plaintiff would present an undue hardship on the sort and that Plaintiff needed to find another position.

31. Other than being introduced on the telephone, Ms. Klinger did not speak or participate during the meeting.

32. Ms. Coates never addressed the fact that the healthcare restrictions were temporary and expired at the beginning of October 2018 or whether they could be re-evaluated by the Plaintiff's healthcare professionals in May 2018.

33. On June 14, 2018, Ms. Coates informed Plaintiff that no position was available to Plaintiff that Plaintiff could perform with or without reasonable accommodation.

34. On July 13, 2018, Defendant ended the Medical Leave of Absence status which it had created for Plaintiff.

35. On July 31, 2018, Defendant ended Plaintiff's United Healthcare health insurance coverage.

36. For all intensive and purposes, Defendant terminated Plaintiff's employment as a Preload Supervisor July, 2018.

37. On January 4, 2019, Plaintiff received notice of termination of his 401k plan with Defendant and was forced to move the proceeds to another company.

38. Plaintiff suffered from temporary medical conditions which caused substantial limitations upon his major life activities including, but not limited to lifting, and walking within the meaning of the ADA.

39. As a result of Plaintiff's stroke and temporary impairment, Plaintiff had substantial limitations upon the major life activities including, but not limited to lifting and walking within the meaning of the ADA.

40. Plaintiff had a history from July 15, 2017 to April 4, 2018, of having a physical impairment which substantially limited his major life activities of lifting and walking.

41. Plaintiff is regarded by others and regarded by the Defendant as having a physical impairment that substantially limited the major life activities of lifting and walking.

42. Despite his disabilities, Plaintiff is able to perform all of the essential functions of his job with reasonable accommodations.

43. Plaintiff is a "qualified individual with a disability" within the meaning of § 101(a) of the American with Disability Act, 42 U.S.C. § 12111(a) because of substantial limitations on his major life activities of lifting and walking.

44. Plaintiff was "regarded as" having a disability by his employer within the meaning of the ADA.

45. Plaintiff's employment was wrongfully terminated and he was discriminated against based upon his disability.

46. While employed with the Defendant, the Plaintiff's job performance had always met or exceeded the Defendant's employment standards and the Plaintiff was adequately performing and meeting all job performance standards of the Defendant as documented by Defendant's records.

47. On April 5, 2018, and continuing, Defendant failed to make simple, straight forward, logical and completely unburdensome reasonable accommodations for Plaintiff to conduct his work as a Preload Supervisor.

48. On April 5, 2018, and continuing, Defendant discriminated against Plaintiff because of his disability and failed to accommodate Plaintiff and Defendant alleged because Plaintiff was not 100% able to do his job, that to allow Plaintiff to continue his job as a Preload Supervisor, would be an undue hardship on Defendant because of Plaintiff's six month

6

Case 5:20-cv-00042-KDB-DSC   Document 1   Filed 04/02/20   Page 6 of 11

restrictions set forth in Plaintiff's authorization to return to work and that Defendant had no other jobs available which Plaintiff could perform with or without accommodations.

49. Defendant's assertions that it was proper to not allow Plaintiff to work as a Preload Supervisor and effectively terminate the Plaintiff's employment because Defendant alleged Plaintiff's working as a Preload Supervisor would summarily be an undue hardship on the Defendant and Plaintiff having absolutely no performance issues, is a ploy used by the Defendant to not allow Plaintiff to work and effectively terminate the Plaintiff's employment because of Plaintiff's disability, Defendant not wanting to comply with ADA and Defendant not wanting to provide Plaintiff straight forward reasonable accommodations related to temporary medical restrictions.

50. Plaintiff requested and the Defendant failed to provide the Plaintiff reasonable accommodations for his disability as set forth herein.

51. Defendant intentionally failed to provide reasonable accommodations for Plaintiff's disability.

## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

52. Plaintiff incorporates by reference herein, the allegations set forth in paragraphs 1 through 51 of the Complaint.

53. Defendant unlawfully and intentionally discriminated against Plaintiff by not providing reasonable accommodations and effectively terminating him because of his status as a qualified individual with a disability, his history of disability, or being regarded as having a disability is in violation of the provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 § 12117, as amended. Plaintiff is entitled to recover his lost

7

Case 5:20-cv-00042-KDB-DSC   Document 1   Filed 04/02/20   Page 7 of 11

employment benefits as set forth in § 706(g) of the Civil Rights Act of 1964, which has been incorporated by reference into the ADA.

54. The Plaintiff is entitled to reinstatement of his job, back pay, interest on back pay, front pay, employment benefits including but not limited to vacation pay, sick pay, health insurance benefits, and life insurance benefits. Plaintiff's losses are in an amount greater than $10,000.00.

55. The Defendant's conduct as described above was willful, malicious, oppressive, wanton, and recklessly indifferent to the federally protective rights of the Plaintiff, herein justifying an award of punitive damages in accordance with the provisions of § 1977A of the Civil Rights Act of 1991, which apply to ADA cases, in an amount greater than $10,000.00.

## WRONGFUL DISCHARGE

56. The Plaintiff incorporates by reference herein, the allegations set forth in paragraphs 1 through 55 of the Complaint.

57. The termination of Plaintiff from his position was in violation of the public policy in the State of North Carolina, specifically, the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et. seq.*, and the North Carolina Persons with Disabilities Protection Act, N.C.G.S. § 168A-5-11, *et. seq.*, which makes discrimination on account of disability of an otherwise qualified individual, handicap, and/or disabled person, an unlawful employment practice in North Carolina.

**WHEREFORE, PLAINTIFF PRAYS THE COURT** for relief as follows:

1. For a trial by jury as to all claims set forth herein;
2. In addition to the Plaintiff's loss of job income and job benefits, that the Plaintiff recover compensatory damages in an amount greater than $10,000.00;
3. That the Plaintiff recover his back pay losses, front pay losses, job benefits, wage increases, diminished retirement benefits and interest in an amount in excess of $10,000.00;
4. That the Plaintiff recover punitive damages in an amount exceeding $10,000.00;
5. That the Plaintiff recover the full costs of this action;
6. That the Plaintiff recover pre-judgment interest on his back pay claims;
7. That the Plaintiff recover damages for mental anguish and pain and suffering caused by the Defendant;
8. That the Plaintiff recover his reasonable attorney's fees;
9. Pursuant to ADA and North Carolina law, grant Plaintiff compensatory damages, interest, reasonable attorney's fees and liquidated damages in an amount equal to the sum of the compensatory damages and the interest on those damages against Defendant for all wages, salary, bonuses, fringe benefits or other compensation that Plaintiff lost as a result of Defendant's violation of ADA and North Carolina law;
10. That the Defendant be ordered to implement procedures and policies to prevent illegal discriminatory activities and that the Defendant be enjoined from committing further violations of ADA and North Carolina law; and
11. For such further and other relief as the Court may deem just and proper.

This the 2nd day of April, 2020.

                                        s/ Todd J. Combs
                                        Todd J. Combs
                                        N.C. Bar No.: 23381
                                        *Attorney for Plaintiff*
                                        Combs Law, PLLC
                                        1965 Mecklenburg Hwy
                                        Mooresville, NC 28115
                                        Telephone: 704-799-2662
                                        Facsimile: 888-254-0111
                                        todd@combslaw.org

NORTH CAROLINA

IREDELL COUNTY

Earl Cook BEING FIRST DULY SWORN, DEPOSES AND SAYS:

That he is the Plaintiff in the foregoing action; that he has read the foregoing Complaint and knows the contents thereof, that the matters and things stated therein are true to the best of his knowledge, save and except those matters and things stated upon information and belief, and as to those, he believes them to be true.

This the 2 day of April, 2020.

_____
Earl Cook     AFFIANT

SWORN TO AND SUBSCRIBED before me

this the 2 day of April, 2020.

_____ (SEAL)
Official Signature of Notary Public

Jodi Zanolini
Printed or Typed Name of Notary Public

My Commission Expires: February 23, 2027

JODI ZANOLINI
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
2/23/2027